UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| HAMILTON PROPER PARTNERS ) | Case No. 14-00461-JMC-11 |
| GOLF PARTNERSHIP, L.P. ) | |
| ) | Chapter 11 |
| Debtor. ) | |

**DEBTOR'S FIRST DAY MOTION FOR
AUTHORITY TO USE CASH COLLATERAL FOR
<u>OPERATING EXPENSES AND GRANTING REPLACEMENT LIENS</u>**

Hamilton Proper Partners Golf Partnership, L.P., as debtor and debtor-in-possession (the "Debtor"), by counsel, pursuant to 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 4001(b), and Southern District of Indiana Local Rule B-4001-2, requests that the Court enter an Order authorizing the use of cash collateral as defined by 11 U.S.C. § 363(a) for operating expenses on an interim basis through a hearing on a final Order, and granting of replacement liens. In support, the Debtor states as follows:

**I.     <u>General Background</u>**

1. On January 24, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. No trustee or examiner has been appointed in this Chapter 11 Bankruptcy Case. No official unsecured creditors' committee has yet been appointed in this Chapter 11 Bankruptcy Case.

3. This is a "First Day Motion" as that term is defined in the Southern District of Indiana Local Rule ("Local Rule") B-9013-3(f)(2).

4.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M) and is a matter of federal bankruptcy law.

5.      Proposed counsel for the Debtor has discussed the filing of this motion with the courtroom deputy for the Honorable James M. Carr, Judge, U.S. Bankruptcy Court for the Southern District of Indiana and a staff attorney for the United States Trustee, in accordance with Southern District of Indiana Local Rule B-9013-3(b).

## II.     Interests Asserted in the Debtor's Accounts, Accounts Receivable and Inventory

6.      According to the Debtor's preliminary investigation and analysis, the following interests are asserted against the Debtor's accounts and accounts receivable:

   a.   UCC financing and continuation statements initially filed with the Indiana Secretary of State on January 10, 2006 by Textron Financial Corporation ("Textron") and subsequently assigned to HGCC Lender, LLC[1] ("HGCC") and purporting to perfect an interest in essentially all assets of the Debtor, including, but not limited to, all *accounts*, goods, equipment, *inventory*, general intangibles, the Debtor's Retailer Permit No. RR2992103, and any other such permits issued by the State of Indiana Alcohol and Tobacco Commission, all of the Debtor's rights under any leases of personal property, all governmental permits issued to the Debtor,

---

[1] HGCC's debt is also secured by the Debtor's real estate located at 122255 Club Point, Fishers, Indiana 46038 (the "Primary Real Estate") pursuant to a mortgage in favor of Textron, in the original principal sum of $5,650,000.00, dated December 30, 2005 and recorded January 18, 2006, as Instrument No. 200600001965 in the Office of the Recorder of Hamilton County, Indiana, which was subsequently amended by the first amended mortgage dated January 1, 2013 and recoded July 10, 2013, as Instrument No. 2013042660 in the Office of Recorder of Hamilton County, Indiana, and then amended a second time by the second amended mortgage dated June 28, 2013 and recorded July 10, 2013, as Instrument No. 2013042661, in the Office of the Recorder of Hamilton County, Indiana, and ultimately assigned to HGCC by Assignment of Mortgage, Security Agreement and Fixture Filing dated September 12, 2013 and recorded September 17, 2013, as Instrument No. 2013059434 in the Office of Recorder of Hamilton County, Indiana (the "HGCC Mortgage").  HGCC's debt is also secured by additional 5 acres of real estated owned by the Debtor, that is to be used as the site of a new maintenance facility (the "Additional Real Estate") pursuant to a mortgage in favor of HGCC Lender, LLC, dated November 21, 2013 and recorded November 21, 2013, as Instrument No. 2013070156 in the Office of the Recorder of Hamilton County, Indiana (the "HGCC 2nd Mortgage").  The Primary Real Estate and Additional Real Estate are collectively referred to herein as the "Real Estate".

        including but not limited to those for sue of chemicals, operation of wells and lakes for irrigation and other uses and elevators.

b. UCC financing statement initially filed with the Indiana Secretary of State on March 1, 2012 by Golden Investments VIII, LLC ("Golden Investments") and purporting to perfect an interest in all ***accounts and accounts receivable*** of the Debtor now or hereafter acquired.

c. UCC financing statement initially filed with the Indiana Secretary of State on March 1, 2012 by Golden Investments and purporting to perfect an interest in all of the ***Debtor's right, title and interest in and to certain promissory notes executed and delivered by members of the Hawthorns Golf & Country Club to the Debtor***.

d. UCC financing statement initially filed with the Indiana Secretary of State on March 21, 2013 by US Foods, Inc. ("US Foods") and purporting to perfect a purchase money interest and lien in all goods, inventory, equipment and fixtures sold to the Debtor by US Foods and all other assets of the Debtor, including all ***accounts***, goods for sale, lease or other disposition which have given rise to accounts and have been returned to or repossessed or stopped in transit by US Foods, and goods, including without limitation, inventory, equipment, fixtures, trade fixtures and vehicles.

### III.    Relief Requested

7. The Debtor has performed a preliminary investigation and analysis of the related UCC filings and based upon this preliminary investigation believes that the Debtor's personal property, along with other assets serve as collateral to secure the payment of certain of the above-referenced obligations. The Debtor does not concede, however, that any asserted interest is a valid, perfected, or enforceable pre-petition lien in and to any of said property nor does the Debtor concede the priority of any creditor's interest. The Debtor retains the right to contest the validity, perfection, and enforceability of all alleged interests.

8. As of the Petition Date, the Debtor believes HGCC and Golden Investments are the only creditors with security interests in the Debtor's accounts and account receivables. The Debtor believes US Foods purported lien in accounts is limited as a purchase money interest lien

in only those goods, inventory, equipment and fixtures sold to the Debtor by US Foods and the proceeds thereof. Accordingly, the Debtor does not believe US Foods has a valid perfected security interest in the Debtor's accounts and account receivables.

9. As of the Petition Date, the Debtor's investigation revealed the following indebtedness to creditors that allege an interest in the Debtor's accounts, account receivables and/or inventory:

    a. HGCC, in the alleged approximate amount of $4,754,444.61; and

    b. Golden Investments, in the approximate amount of $306,965.53 ($83,900.88 secured by Debtor's right, title and interest in and to certain promissory notes executed and delivered by members of the Hawthorns Golf & Country Club to the Debtor and $223,064.65 secured by the Debtor's accounts and accounts receivable).

10. In order to permit, among other things, the orderly and continued operation of the Debtor's business, the Debtor has an immediate need to use cash collateral in which HGCC and Golden Investments may assert an interest. The use of cash collateral is necessary to prevent immediate and irreparable harm to the Debtor and its property that would otherwise result if the Debtor is prevented from obtaining use of cash collateral for the continued operation of its business.

11. The Debtor has no present alternative borrowing source from which to secure sufficient additional funding to operate its business without utilizing cash collateral.

12. The Debtor is unable to operate its businesses without interim use of cash collateral.

13. Without interim relief, the Debtor will not be able to operate its business for fourteen (14) or more days until a final hearing on this motion can be held. Accordingly, the Court, as a preliminary matter, should enter an interim order authorizing the Debtor to use cash

collateral consistent with the cash use budget attached hereto as Exhibit "A" (the "Initial Cash Use Budget").

14. Certain of the Debtor's Petition Date cash and cash equivalents (cash and accounts receivable) constitute "cash collateral" (as that term is defined in § 363(a) of the Bankruptcy). On the Petition Date, the Debtor had cash on hand or on deposit in the approximate available amount of $9,295.07 and outstanding, net collectible receivables of approximately $79,324.57, both of which are cash collateral within the meaning of § 363(c)(2) of the Bankruptcy Code (the "Cash Collateral").

15. The Debtor believes that pursuant to § 552(a) of the Bankruptcy Code, any postpetition revenues received by the Debtor do not constitute cash collateral within the meaning of § 363 of the Bankruptcy Code, and that neither HGCC nor Golden Investments have an interest to assert against the Debtor's postpetition revenues. Furthermore, the Debtor does not believe the Real Estate generates any cash collateral in which any party has an interest.

16. Pursuant to Southern District of Indiana Local Rule B-4001-2(d), the Debtor anticipates that its average aggregate monthly expenses for February 2014 will be approximately $368,601.00. The Debtor's financial projections for which it seeks authority to use cash collateral are set forth in the Initial Cash Use Budget, and show that the Debtor will use cash collateral for the operation, maintenance, and upkeep of the Real Estate and the Debtor's personal property and for expenses incurred in the ordinary course of business, including the Debtor's attorneys' fees for this Chapter 11 Case. Any shortfall will be made up with the debtor-in-possession financing that the Debtor is concurrently seeking authority to enter into.

## IV.  Basis for Relief Requested

17. In accordance with § 363(c)(2)(B) of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Southern District of Indiana Local Rule B-4001-2, the Debtor requests that the Court enter an Order authorizing its interim use of cash collateral for payment of its ordinary and necessary operating expenses though the date of a final hearing on this motion, as detailed in the Initial Cash Use Budget.

18. HGCC and Golden Investments may be entitled to adequate protection for their alleged interests in the Debtor's Cash Collateral. The Debtor therefore agrees and requests authority to provide adequate protection as follows:

> a. The Debtor will grant HGCC a postpetition replacement lien, to the extent of HGCC's interest, in the cash, receivables and all of the Debtor's after-acquired inventory to the extent of any diminution in value of HGCC's interest in pre-petition receivables and inventory.
>
> b. Golden Investments will continue to receive the Debtor's quarterly receipts from certain promissory notes executed and delivered by members of the Hawthorns Golf & Country Club to the Debtor which secures Golden Investments' note in the approximate sum of $83,900.88. The Debtor will not utilize Golden Investments' cash collateral from the member promissory notes. Additionally, Golden Investments' note in the approximate sum of $223,064.65 will also be secured by certain promissory notes executed and delivered by members of the Hawthorns Golf & Country Club to the Debtor.
>
> c. The Debtor will use cash Collateral for the operating, maintenance, and upkeep of the Real Estate and the Debtor's personal property and for expenses incurred in the ordinary course of business, including the Debtor's attorneys' fees for this Chapter 11 Case, and consistent with the Initial Cash Use Budget and consistent with subsequent budgets submitted by the Debtor from time to time to the Court. The Debtor is in the process of obtaining an appraisal of the Real Estate and believe there is sufficient equity in the Real Estate to adequately protect HGCC. Additionally, all real estate taxes have been paid and the Debtor will continue to keep the Real Estate insured.

19.     In the event the Court does not authorize the use of the cash collateral, the Debtor believes it will not be able to maintain its current business operations.  Without use of Cash Collateral, the Debtor will be seriously and irreparably harmed, resulting in significant losses to the Debtor's estate and its creditors.

WHEREFORE, the Debtor requests that this Court enter an Order:  (i) authorizing and allowing the Debtor to use cash collateral on an interim basis pursuant to § 363(c)(2)(B) of the Bankruptcy Code through the entry of a Final Order; (ii) scheduling a final hearing on the Debtor's use of cash collateral; and (iii) granting for all other just and proper relief.

Respectfully submitted,

DALE & EKE, P.C.

By:     /s/ Meredith R. Theisen
    Meredith R. Theisen (Atty. No. 28804-49)
    Deborah J. Caruso (Atty. No. 4273-49)
    Erick P. Knoblock (Atty. No. 18296-49)
    DALE & EKE, P.C.
    9100 Keystone Crossing, Suite 400
    Indianapolis, Indiana 46240
    Tel: (317) 844-7400
    Fax: (317) 574-9426
    Email: mtheisen@daleeke.com
    Attorneys for the Debtor

## **CERTIFICATE OF SERVICE**

   I hereby certify that on January 24, 2014, a copy of the foregoing *Debtor's First Day Motion for Authority to Use Cash Collateral for Operating Expenses and Granting Replacement Liens* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

- James E. Carlberg    jcarlberg@boselaw.com, mwakefield@boselaw.com
- Jeannette Eisan Hinshaw    jeannette.hinshaw@usdoj.gov
- U.S. Trustee ustpregion10.in.ecf@usdoj.gov

   I further certify that on January 24, 2014, a copy of the foregoing *Debtor's First Day Motion for Authority to Use Cash Collateral for Operating Expenses and Granting Replacement Liens* was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

   None.

                    /s/ Meredith R. Theisen
                    Meredith R. Theisen

i:\client\h\ham119\bankruptcy\first.day.cash.collateral.motion.doc