UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| HAMILTON PROPER PARTNERS GOLF PARTNERSHIP, L.P., | ) ) | Case No. 14-00461-JMC-11 |
| | ) | Chapter 11 |
| Debtor. | ) | |

**<u>INTERIM ORDER (I) AUTHORIZING SECURED POST-PETITION FINANCING ON A SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. § 364(c), AND (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)</u>**

Upon the first day motion (the "<u>Motion</u>") dated January 24, 2014 of Hamilton Proper Partners Golf Partnership, L.P., the Debtor-in-Possession (the "Debtor"), (A) seeking this Court's authorization pursuant to Section 364(c) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), for the Debtor, *inter alia* (i) to obtain secured post-petition financing (the "Post-Petition Financing") up to an aggregate principal amount not to exceed $200,000.00 from Horizon III, LLC ("Horizon"), (ii) to grant Horizon, pursuant to § 364(c)(2) and (3) of the Bankruptcy Code, a security interest in: (a) all of

{00060106.DOCX}

**Exhibit "A"**

the Debtor's after-acquired inventory, subject to a replacement lien in favor of HGCC Lender, LLC ("HGCC") to the extent of any diminution in value of HGCC's interest in pre-petition inventory; and (b) Debtor's preference action(s) and any proceeds thereof against HGCC, and (iii) to grant Horizon, pursuant to § 364(c)(1) of the Bankruptcy Code, priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b); and (B) seeking an interim order from the Petition Date to the date of a final hearing on the Motion at which time the Court will consider entry of a final order authorizing on a final basis, *inter alia*, the Post-Petition Financing (this "Interim Order"); and this Court having found good and sufficient cause appearing therefore,

THE COURT FINDS AND CONCLUDES THAT:

A.  On January 24, 2014 (the "Petition Date"), the Debtor filed its voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is continuing in possession of its property, and operating and managing its business, as Debtor-in-Possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

B.  This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.  Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 18), the Debtor acknowledges and stipulates that from time to time prior to the Petition Date, Horizon loaned money to or for the benefit of the Debtor as documented, recorded and evidenced by various agreements, instruments, and documents entered into in connection therewith, all as may have been amended, modified or restated from time to time (collectively, the "Pre-Petition Agreements");

D.  Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 18), Debtor acknowledges and stipulates that, in accordance with the terms of the Pre-Petition Agreements, the Debtor is truly and justly indebted to Horizon, without defense, counterclaim or offset of any kind, and that as of the Petition Date, (i) the Debtor is liable to Horizon in respect of loans made pursuant to the Pre-Petition Agreements in the approximate aggregate principal amount of $150,000 (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities, and excluding prepaid deposits paid by Horizon for unrelated matters and contingent liabilities under guaranties) (the "Pre-Petition Indebtedness"), and (ii) pursuant to the Pre-Petition Agreements, the Debtor is liable to Horizon for accrued and unpaid interest, commitment fees, attorneys' and advisors' fees, other out-of-pocket expenses, costs and indemnities.

E.  The Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course of business or operate its business and maintain its property in accordance with state and federal law without the Post-Petition Financing.  The Debtor's ability to maintain business relationships with vendors, suppliers and customers, to pay employees and otherwise to finance its operations, is essential to the Debtor's continued viability and expedient reorganization. In addition, the Debtor's need for financing is immediate. In the absence of the Post-Petition Financing, the continued operation of the Debtor's business would not be possible, and serious and irreparable harm to the Debtor and its estate would occur.  The preservation, maintenance and enhancement of the going concern value of the Debtor is of the utmost significance and importance to a successful and expedient reorganization of the Debtor under Chapter 11 of the Bankruptcy Code.

F.  Given the Debtor's current financial condition, financing arrangements and

capital structure, the Debtor cannot obtain unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a post-petition basis is not otherwise available without the Debtor (i) granting, pursuant to § 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in §§ 503(b) and 507(b) of the Bankruptcy Code; and (ii) securing, pursuant to §§ 364(c)(2) and (3) of the Bankruptcy Code, such indebtedness and obligations with security interests in and liens on all of the Debtor's post-petition inventory, subject to a replacement lien in favor of HGCC to the extent of any diminution in value of HGCC's interest in pre-petition inventory, and preference action(s) against HGCC. It is in the best interests of the Debtor, its estate and reorganization prospects to incur the Post-Petition Indebtedness from Horizon, as contemplated hereby.

   G.  Notice of the hearing to consider the Interim Order (the "Interim Hearing") and the relief requested in the Motion was given to (i) the Office of the United States Trustee, (ii) counsel to Horizon, (iii) the creditors holding the 20 largest unsecured claims against the Debtor, (iv) all other parties having a lien on or security interest in the Debtor's assets or property; and (vi) all equity security holders. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion constitutes adequate and sufficient notice under §§ 102(1) and 364(c) of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001(c), and no other notice needs to be given.

   H.  At the Interim Hearing, the court considered representations made by counsel, offers of proof, and/or testimony regarding:

     (i) the negotiations pertaining to this Interim Order;

     (ii) the necessity for this Interim Order;

     (iii) the events leading up to the filing of the Chapter 11 Case by Debtor;

    (iv) the Debtor's assets and the existing and proposed security interests thereon;

    (v) Debtor's need for credit to the extent necessary to avoid immediate and irreparable harm to the estate, pending a final hearing in accordance with Bankruptcy Rule 4001(c); and

    (vi) those expenses necessary to avoid immediate and irreparable harm to the estate, and those expenses necessary to preserve, maintain and enhance the going concern value of the Debtor's assets necessary to a successful and expedient reorganization of the Debtor.

  I.  Based on the record presented to the Court by the Debtor at the Interim Hearing, the Post-Petition Financing has been negotiated in good faith and at arm's length between the Debtor and Horizon, and any credit extended, and loans made to the Debtor pursuant to the Post-Petition Financing shall be deemed to have been extended, issued or made, as the case may be, in good faith by Horizon as required by, and within the meaning of § 364(e) of the Bankruptcy Code.

  J.  Based on the record presented to the Court by the Debtor at the Interim Hearing, the terms of the Post-Petition Financing appear to be fair and reasonable, are ordinary and appropriate for secured financing to a debtor in possession, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

  K.  The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). This Court concludes that entry of this Interim Order is in the best interest of the Debtor's estate and creditors as its implementation will, among other things, provide the Debtor with the necessary liquidity to sustain the operation of its business and enhance the Debtor's prospects for successful reorganization.

  IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, THAT:

1.  The Motion is granted, subject to the terms, modifications, and conditions set forth in this Order.

2.  Debtor is hereby authorized to obtain the Post-Petition Financing and additionally to borrow money and seek other financial accommodations from Horizon after the Petition Date pursuant to the terms and conditions of this Interim Order and the Loan Documents attached to the Motion as Exhibit "B" (the "Loan Documents").  The Loan Documents are approved and incorporated herein in their entirety.  Horizon shall be authorized to advance such funds constituting Post-Petition Financing subject to the terms and conditions (except as may be modified herein) of this Order and the Loan Documents of no greater than $200,000 from the entry of this Interim Order to the entry of a Final Order. The Debtor is authorized to use the proceeds of any loans (the "Loans") made under the Post-Petition Financing, in the operation of the Debtor's business (all such Loans, and any interest, costs, fees, and/or expenses due and owing pursuant to the Loan Documents shall constitute the "Post-Petition Indebtedness"), provided, that (i) the proposed Loans are consistent with the terms of this Order and the Loan Documents and will only be used to pay, when due, ordinary and customary expenses of the Debtor, and (ii) any requested Post-Petition Financing is necessary after the application of available cash collateral.

3.  In accordance with § 364(c)(1) of the Bankruptcy Code, the Post-Petition Indebtedness shall constitute claims (the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b) and 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, and any successor trustee or any creditor in the Chapter 11 Case or any subsequent

proceedings under the Bankruptcy Code.  No cost or expense of administration under §§ 105, 364(c)(1), 503(b), 506(c) (provided however that the waiver of any claims under § 506(c) shall only be effective upon the entry of a final order granting the relief requested in the Motion on a final basis (the "Final Order")), or 507(b) of the Bankruptcy Code or otherwise, including those resulting from the conversion of the Chapter 11 Case pursuant to § 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Superpriority Claims of Horizon arising out of the Post-Petition Indebtedness.

        4.        As security for the Post-Petition Indebtedness, Horizon shall have and is hereby granted (effective upon the date of this Order and without the necessity of the recordation of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid and perfected security interests in, and liens on (collectively, the "Liens"), all post-petition inventory of the Debtor of any nature whatsoever and wherever located, acquired after the Petition Date, and any and all proceeds of the foregoing, subject to a replacement lien in favor of HGCC to the extent of any diminution in value of HGCC's interest in pre-petition inventory, and, effective upon the entry of the Final Order, causes of action and any avoidance actions under the Bankruptcy Code against HGCC and the proceeds thereof (collectively, with all proceeds and products of any or all of the foregoing, the "Collateral") as follows:

        a.        pursuant to § 364(c)(2) of the Bankruptcy Code, a first priority, perfected Lien upon all of the Debtors' right, title and interest in, to and under all Collateral that is not otherwise encumbered by a validly perfected security interest or lien senior to the Liens of Horizon, subject to a replacement lien in favor of HGCC in the Debtor's post-petition inventory to the extent of any diminution in value of HGCC's interest in pre-petition inventory; and

    b.  pursuant to § 364(c)(3) of the Bankruptcy Code, a second priority, junior perfected Lien upon all of the Debtors' right, title and interest in, to and under all other Collateral which is subject to any valid lien perfected (but not granted) after the Petition Date to the extent such perfection in respect of a Pre-Petition Date claim is expressly permitted under the Bankruptcy Code.

The Liens granted pursuant to this Order to Horizon to secure the Post-Petition Indebtedness shall not be subordinated to or made *pari passu* with any other lien or security interest. The provisions of any intercreditor agreements or subordination agreements which subordinate liens and security interests to the liens and security interests of Horizon or other indentures which subordinate any claims to the claims of Horizon shall remain in full force and effect and shall continue with respect to the liens and security interests granted to Horizon in the Collateral.

    5.  Except as set forth in Paragraph 4 hereof, the Liens shall be prior and senior to all liens and encumbrances (other than Prior Permitted Liens) of all other secured creditors in and to such Collateral granted, or arising, after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor). After the entry of the Final Order, the Debtor shall not assert a claim under § 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by Horizon upon the Collateral.  The Liens granted pursuant to this Order shall constitute valid and duly perfected security interests and liens, and Horizon shall not be required to file or serve financing statements, notices of lien or similar instruments in respect of the Post-Petition Indebtedness which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security

interests and liens; and the failure by the Debtor to execute any documentation relating to the Liens shall in no way affect the validity, perfection or priority of such Liens. If, however, Horizon at its sole discretion shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Liens, the Debtor is directed to cooperate with and assist in such process, the stay imposed by § 362(a) of the Bankruptcy Code is hereby lifted to allow the filing and recording of a certified copy of this Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of this Order.

6. Proceeds or payments received by Horizon with respect to the Collateral upon which Horizon has a lien shall be applied by Horizon as follows:

a. first, to the payment of all costs, fees and expenses, including attorneys' fees of Horizon arising in conjunction with the Loan Documents and/or this Order;

b. second, to the payment of Interest on the Post-Petition Indebtedness; and

c. third, to the payment of the Post-Petition Indebtedness consisting of principal.

If, in the course of this Chapter 11 Case, and contrary to the above provisions, the Court grants liens or security interests to others pursuant to § 364(d) of the Bankruptcy Code or any other provision of the Bankruptcy Code, which liens or security interests are senior or equal to the liens or security interests of Horizon in the Collateral described above (collectively, "Subsequent Liens"), then any proceeds of loans or extensions of credit secured by such Subsequent Liens shall be applied first to payment to Horizon in the order set forth above, and Horizon shall retain all liens and security interests held by it on the Collateral until all of the Post-Petition Indebtedness is paid in full.

7. The agreement by Horizon to make any Post-Petition Financing available to Debtor shall continue until and shall include the earlier of February 28, 2014 or entry of the Final Order, unless terminated prior to this date upon the occurrence of the Termination Date (defined below) or otherwise pursuant to the terms of the Loan Documents or this Order.

8. If a Default or an Event of Default (as defined in the Loan Documents or in this Order) occurs and upon Horizon providing five (5) days prior written notice to Debtor, the office of the United States Trustee, and any statutory committee appointed in the Chapter 11 Case ("Committee"), Horizon may terminate the Post-Petition Financing (the date of any such termination, the "Termination Date") and declare the Loans to be immediately due and payable, and the automatic stay pursuant to § 362(a) of the Bankruptcy Code shall be deemed lifted and modified, without further order of this Court, to permit Horizon to exercise any and all of its rights and remedies under the Loan Documents and this Order; provided, however, that the rights of the Debtor and the Committee to seek entry of an Order, after notice and a hearing, to (i) reinstate, or defend against the lifting of, the automatic stay, or (ii) contest the existence of a Default or Event of Default, shall remain unimpaired and unaffected by any such termination and shall survive termination; and provided further that the obligations and rights of Horizon and Debtor with respect to all transactions which have occurred prior to the Termination Date, including, without limitation, Horizon's security in Collateral shall remain unimpaired and unaffected by any such termination and shall survive such termination; and provided further that upon such termination, Horizon shall be deemed to have retained all of its rights and remedies, including, without limitation, those provided pursuant to the Bankruptcy Code.

9. An Event of Default under this Order shall include: (i) the entry of an order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a Chapter 7 case; (ii) the

entry of an order appointing a Chapter 11 trustee in the Chapter 11 Case; (iii) the entry of an order granting any other claim superpriority status or a lien equal or superior to the liens granted to Horizon; (iv) the entry of an order staying, reversing, vacating or otherwise modifying the Post-Petition Financing under this Order without Horizon's prior written consent; (v) the entry of an order in the Chapter 11 Case appointing an examiner having enlarged powers beyond those set forth under § 1106(a)(3) and (4) of the Bankruptcy Code; (vi) on Event of Default or Default under the Loan Documents; (vii) any material representation or material warranty by the Debtor that is incorrect or misleading in any material respect when made; (viii) there shall occur a material disruption (or change that is unacceptable to Horizon) in the senior management of Debtor or a change of control shall occur other than pursuant to a plan of reorganization in which Horizon is repaid in full; (ix) there shall be any material adverse change in the financial condition, business, operations, properties or performance of Debtor; (x) the entry of any order granting any relief from the automatic stay so as to allow a third party to proceed against any material asset or assets of Debtor, other than relating to assets subject to Prior Permitted Liens which if granted will not materially or adversely affect current operations; (xi) the entry of the Final Order shall not have occurred by _____; (xii) the assertion by Debtor (or any other party in interest) of claims arising under § 506(c) of the Bankruptcy Code against the Horizon or the commencement of other actions adverse to Horizon or its rights and remedies under this Interim Order, the Final Order approving the Motion, or any other Bankruptcy Court order; (xiii) the entry of an order confirming a plan of reorganization in the Chapter 11 Case which is not acceptable to Horizon; or (xiv) the failure to pay in full the Post-Petition Indebtedness when due, unless such failure is consistent with and pursuant to a plan of reorganization acceptable to Horizon. The term "Default" herein means the occurrence of any

event which except for the passage of time or the giving of notice or both would constitute an Event of Default (as defined in the Loan Documents or in this Order).

10. Upon the occurrence of a Default or an Event of Default and written notice to the Debtor, the office of the United States Trustee, and any official committee of creditors, Horizon may exercise its rights and remedies and take all or any of the following actions without further modification of the automatic stay pursuant to § 362 of the Bankruptcy Code, which is hereby deemed modified and vacated to the extent necessary to permit such exercise of rights and remedies and the taking of such actions and without further order of or application to this Court: (a) suspend the Post-Petition Financing; and (b) setoff amounts in any accounts maintained with Horizon, or otherwise enforce rights against all or part of any Collateral in the possession of Horizon subject to the right of the Debtor and/or the Committee to challenge such setoff or enforcement of rights against the Collateral.

11. Without further order of this Court, and in consideration of other accommodations provided by Horizon, the Debtor shall reimburse Horizon for all reasonable out-of-pocket filing and recording fees, reasonable attorneys' and paralegals' fees, costs and expenses and internal audit fees and expenses incurred by Horizon: (i) in the preparation and implementation of this Interim Order and the various Loans and other Post-Petition Financing, (ii) in the representation of Horizon in this proceeding, and (iii) as otherwise provided in the Loan Documents. Subject to Horizon's discretion, the reimbursement contemplated hereby may be made by deducting such amounts from collections of Horizon or by adding such amounts to the Post-Petition Indebtedness. For all of Horizon's expenses paid from and after the effective date of this Interim Order: (i) Horizon shall provide five (5) business days advance written notice of such amounts, along with a summary of such charges, to the Debtor and the Committee; (ii) during such five (5)

business day period (the "Expense Review Period"), the Debtor and the Committee may review Horizon's expenses solely for the purpose of determining their reasonableness; (iii) if the Debtor or the Committee asserts that any such expenses are not reasonable, in order to preserve such objection, the Debtor or the Committee, as applicable, must provide written notice to Horizon by the end of the Expense Review Period detailing with specificity the objection to the reasonableness of any Horizon expense (a "Horizon Expense Objection"); (iv) if any Horizon Expense Objection cannot be resolved by the parties within five (5) business days after the conclusion of the Expense Review Period, the Debtor or the Committee, as applicable, may either waive Horizon's Expense Objection or file the applicable Horizon Expense Objection with the Court; and (v) pending a Court resolution of a Horizon Expense Objection, the Debtor shall promptly pay the Horizon expenses at issue, subject to the objecting party's right to seek the disallowance, disgorgement or recharacterization of such expenses objected to in the Horizon Expense Objection.

12. The Debtor is hereby required to deliver to Horizon such other financial and other information concerning the business and affairs of the Debtor as Horizon shall reasonably request from time to time. The Debtor shall fully cooperate with and permit Horizon to perform physical inventories of all inventory in the Debtor's facilities at any reasonable times requested by Horizon. The Debtor shall further provide Horizon with (a) detailed information as to the extent and composition of the Collateral and any collections thereon; (b) a weekly report, with information reasonably satisfactory to Horizon, identifying and differentiating inventory and Collateral; and (c) a weekly revenue report (including reports of sales).

13. Having been found to be extending credit and making Loans to the Debtor in good faith, Horizon shall be entitled to the full protection of § 364(e) of the Bankruptcy Code

with respect to the Post-Petition Financing and the Liens created or authorized by this Order and the Loan Documents in the event that this Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. Any stay, modification, reversal or vacation of this Order shall not affect the validity of any obligation of the Debtor to Horizon incurred pursuant to this Order. Notwithstanding any such stay, modification, reversal or vacation, all Loans made pursuant to this Order, and all other Post-Petition Financing incurred by the Debtor pursuant hereto prior to written notice to Horizon of the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof, and Horizon shall be entitled to all the rights, privileges and benefits, including without limitation, the Liens, and Superpriority Claims granted herein.

14. The transactions contemplated by the Post-Petition Financing are not intended to give Horizon sufficient control over Debtor so as to subject Horizon to any liability (including, without limitation, environmental liability as an "owner," "operator," or "responsible person" as those terms are used in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorizations Act of 1986) in connection with the management of the Debtor's business or any of the Debtor's properties. By providing the Post-Petition Financing or taking any actions pursuant to this Order, Horizon shall not: (i) be deemed to be in control of the operations or liquidation of Debtor; or (ii) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation, management or liquidation of Debtor.

15. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered, including without limitation (a) confirming any plan of reorganization in the Chapter 11 Case (and the Post-Petition Indebtedness shall not be discharged

by the entry of any such order or pursuant to Bankruptcy Code § 1141(d)(4), the Debtor having hereby waived such discharge); (b) converting the Chapter 11 Case to a Chapter 7 case; or (c) dismissing the Chapter 11 Case, and the terms and provisions of this Order as well as the Superpriority Claims and Liens granted pursuant to this Order and the Loan Documents shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims and Liens shall maintain their priority as provided by this Order until all Post-Petition Indebtedness is indefeasibly paid in full and discharged.

16. Horizon's obligations under this Order are conditional upon and subject to the delivery to Horizon of evidence acceptable to Horizon that the Collateral is insured for the full replacement value thereof and Horizon is named as loss payee and/or as additional insured on all insurance policies upon request of Horizon.

17. In consideration for the Post-Petition Financing, Debtors on behalf of itself and its successors and assigns (collectively, the "Releasors"), but without prejudice to the rights of third parties (including an official committee appointed in the Chapter 11 Case) to assert claims on behalf of the Debtor's estate (subject to Paragraph 18 below), shall forever release, discharge and acquit Horizon and its managers, members, officers, employees, agents, attorneys and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type, including, without limitation, any so-called "lender liability" claims or defenses, which arose on or prior to the date this Interim Order is entered with respect to Debtor, the Pre-Petition Indebtedness, the Collateral, the Pre-Petition Agreements, the Post-Petition Indebtedness or the Post-Petition Financing.

18. The findings contained in the recital paragraphs of this Interim Order shall be

binding upon all parties in interest, including without limitation, the Debtor and any statutory committees appointed in the Chapter 11 Case, unless (a) a party in interest (including any statutory committee appointed in the Chapter 11 Case) has properly filed an adversary proceeding or commenced a contested matter (subject to the limitations set forth in this Order) challenging the amount, validity, or enforceability of the Pre-Petition Indebtedness, or otherwise asserting any claims or causes of action against Horizon relating to the Pre-Petition Indebtedness on behalf of the Debtor's estate, no later than the earlier date that is ninety (90) days after the formation of an official committee of unsecured creditors or the entry of the Final Order, and (b) the Court subsequently enters a judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter filed within the time period set out in subsection (a) above. If no such adversary proceeding or contested matter is properly commenced as of such date, the Pre-Petition Indebtedness shall constitute an allowed claim, not subject to subordination and otherwise unavoidable.  If any such adversary proceeding or contested matter is properly commenced as of such date, the findings contained in the recital paragraphs of this Order shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged in such adversary proceeding or contested matter.

19.     Entry of this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which Horizon may have against the Debtor or any third parties, and without prejudice to the right of Horizon to seek relief from the automatic stay in effect pursuant to § 362 of the Bankruptcy Code, or any other relief in the Chapter 11 Case, and the right of the Debtor to oppose any such relief. The provisions of this Order shall be binding upon and inure to the benefit of Horizon and its successors and assigns, and the Debtor, and its successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Case as a

legal representative of the Debtor or the Debtor's estate.

20. In no event shall Horizon be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any Collateral.

21. The Debtor is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Loan Documents, as Horizon may reasonably require, as evidence of and for the protection of the Post-Petition Financing, or which otherwise may be deemed reasonably necessary by Horizon to effectuate the terms and conditions of this Order and the Loan Documents.

22. To the extent there exists any conflict between the Loan Documents and the express terms of this Order, this Order shall govern.

23. This matter is set for Final Hearing at_____ o'clock __.m. on _____, 2014. At the Final Hearing, the Court will rule on the continued effectiveness of this Order. The Debtor shall provide notice of the date of the Final Hearing, together with a copy of this Order, to the parties identified in paragraph G of this Order, to any party which has filed prior to such date a request for notices with this Court and to any counsel for any statutory committee of unsecured creditors appointed pursuant to §1102 of the Bankruptcy Code, by Expedited Service (Option B). The notice of entry of this Order shall state that any party in interest objecting to the Post-Petition Financing shall file written objections with the Clerk of the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division, by _____, 2014. Objections shall be served so that the same are received on or before such date and time by: (a) counsel for the Debtor; (b) counsel for Horizon, and (c) the Office of the United States Trustee.

###

**Schedule 1**

Summary of Provisions as Required by General Order 03-10, Sec. 5.4 (See attached)

Schedule 1

Summary of Provisions as Required by Local Rule B-4001-2(b)

Facility

Total Amount of Facility: $200,000

Budget: None

Est. Value of Collateral: Debtor believes value exceeds Facility.

Maximum Borrowing: $200,000

Interest Rate: 3%

Fees, costs, expenses to be born by Debtors: Lender's attorneys' fees, costs and expenses.

Maturity:   February 28, 2014 (on interim basis)

Limitations on Use of Funds: Funds may only be used in the ordinary course of Debtor's Business.

Validity of pre-petition claim:  Pre-petition unsecured claim is allowed unless contested by party in interest within the earlier of within 90 days of the formation of Committee or entry of a final order.

Waiver of claim:  Debtor waives claims against Horizon.

Events of Default: See Paragraph 9 of DIP Financing Order

Protections Under 364:

    (a) Superpriority claims under 364(c)(1)

    (b) Liens on unencumbered assets under 364(c)(2) (post petition inventory and preference action against HGCC)

    (c) Liens on encumbered assets 364(c)(3) (if applicable, post petition inventory)