UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| HAMILTON PROPER PARTNERS GOLF ) | CASE NO. 14-00461-JMC-11 |
| PARTNERSHIP, L.P., ) | |
| ) | |
| Debtor. ) | |

### OBJECTION TO DEBTOR'S FIRST DAY MOTION FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING

Comes now HGCC Lender, LLC ("HGCC"), a secured creditor herein, by counsel, and for its Objection To Debtor's First Day Motion For Authority To Obtain Post-Petition Financing ("Objection") respectfully represents as follows:

### I. BACKGROUND

1.   On January 24, 2014 (the "Petition Date"), Hamilton Proper Partners Golf Partnership, L.P., the debtor herein ("Debtor"), filed its Chapter 11 petition. The Debtor's primary asset is a golf course and country club known as "The Hawthorns Golf & Country Club," located at 12255 Club Point, Fishers, Indiana 46038.

2.   HGCC is by far the Debtor's largest creditor, and is the holder of certain loans made to the Debtor with an unpaid balance exceeding $4.75 million. The loans made by HGCC to the Debtor are secured by mortgages and first priority security interests in substantially all of the Debtor's real and personal property.

3.   The Debtor is an Indiana limited partnership, whose general partner is HDG HPPGP Genpar, L.L.C., an Indiana limited liability company ("HDG"). The sole member of HDG is HDG Investments, LLC, an Indiana limited liability company ("Investments"). The Chairman, President and CEO of Investments is Harold D.

Garrison ("Garrison").  Garrison also owns or otherwise controls Horizon III, LLC ("Horizon"), the proposed DIP lender.

## II.   DEBTOR'S FIRST DAY MOTION FOR $200,000 DIP LOAN FROM HORIZON

4. On January 24, 2014, the Debtor filed its First Day Motion For Authority To Obtain Post-Petition Financing (Doc. 12; the "Financing Motion") requesting authority to borrow up to $200,000 from Horizon.  The purported basis for the Financing Motion is that the winter is the slow season for a golf course in Indiana and that the Debtor needs the post-petition loan "for payment of ongoing operating expenses and to allow the Debtor to effect a successful reorganization." (Financing Motion at ¶10)

5. As demonstrated below, the Debtor's proposed loan from an insider should be denied.  Aside from the Debtor's self-serving and conclusory statements, there is no showing that the Debtor has an immediate need for post-petition financing. Moreover, the proposed terms of the Financing Motion are unreasonable and contrary to the applicable law and rules governing post-petition loans.

## III.   OBJECTIONS TO DEBTOR'S FINANCING MOTION

### A.   The Debtor Has Not Demonstrated A Need For Post-Petition Financing.

6. Pursuant to Bankruptcy Rule 4001(c)(2), the Court may authorize post-petition credit on an interim basis "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  There is no evidence, affidavits or even allegations in the Financing Motion supporting the Debtor's urgent need for a post-petition loan to avoid immediate and irreparable harm.

7. Presumably, the Debtor will rely on the "budget" attached as Exhibit A to the cash collateral motion (Doc. 10) as evidence demonstrating an urgent need for post-

petition financing. However, as demonstrated in HGCC's objection to the cash collateral motion (See Doc. No. 28), the Debtor's "budget" is deficient on numerous grounds and does not conform with the minimum standards for a cash flow forecast expected of any chapter 11 debtor. The "budget" is not prepared on a cash basis, only goes through February 2014, fails to sufficiently itemize operating expenses and designate those expenses that are absolutely critical to maintaining the estate, and improperly includes management expenses, professional fees and other expenses that can and should be deferred or not paid at all. A properly prepared cash flow forecast will demonstrate that the Debtor does not have an urgent need for post-petition financing to avoid immediate and irreparable harm to the estate.

**B.    The Financing Motion Fails To Identify The Insider Status Of Horizon.**

8.    Remarkably, the Financing Motion never advises the Court or parties in interest that the proposed loan is from an insider entity owned or otherwise controlled by Garrison. Transactions between Chapter 11 debtors and insiders are subject to a higher degree of scrutiny. *See, e.g., In re RJC Indus., Inc.*, 369 B.R. 845, 851 (Bankr. M.D.Pa. 2006) (insider loans must be "carefully scrutinized"); *In re Regensteiner Printing Co.*, 122 B.R. 323, 326 (Bankr. N.D. Ill. 1990) ("courts must scrutinize transactions between insiders and the debtor-in-possession to ensure the transactions are fair to the estate and creditors.").

9.    Not only is Horizon an insider of the Debtor, but as alleged in the Financing Motion, Horizon has also apparently made pre-petition loans to the Debtor. It is astounding that the Debtor thought that this insider relationship was not worth mentioning, as it obviously impacts the fairness and objectivity of "negotiations"

between the parties. Not only does the Debtor fail to mention its relationship with Horizon, but the Debtor has the audacity to characterize the proposed loan as the product of "arm's length negotiations" (Financing Motion at ¶14) and also seeks the protection of 11 U.S.C. §363(m).[1]

    **C.**    **The Debtor Has Made No Showing That Alternative Financing Is Unavailable.**

10.    Pursuant to 11 U.S.C. §364(c), the burden is on the Debtor to demonstrate that unsecured credit allowable as an administrative expense under 11 U.S.C. §503(b)(1) is unobtainable. The Financing Motion fails to describe any efforts to obtain alternative financing and simply concludes that the Debtor's current financial condition precludes the possibility of unsecured credit allowable as an administrative claim. (Financing Motion, ¶12)

11.    The Debtor's position that seeking unsecured credit would be futile is undermined by the fact that counsel, employees and vendors are apparently willing to provide services and goods to the Debtor in reliance on the expectation that the provision of such services and goods will give rise to administrative claims. There is simply no logical reason to assume that Horizon – an insider of the Debtor – would not extend unsecured credit to the Debtor pursuant to §364(b). Garrison's "negotiation" to borrow from one entity controlled by him (Horizon) for the purpose of making a loan to another entity controlled by him (the Debtor) does not satisfy the Debtor's burden of proof under §364(c).

12.    Additionally, the Debtor has made significant transfers of funds to its affiliates during the months leading up to this bankruptcy. It is necessary that a

---

[1] The Financing Motion fails to request a finding of good faith as contemplated in 11 U.S.C. §364(e); however, the proposed Interim Order would include such a finding (Financing Motion, Exhibit A, ¶I).

sufficient investigation of these transfers take place to assure that Horizon is not simply making a loan to the Debtor with funds improperly transferred from the Debtor to Horizon or other Debtor affiliates.

### D. The Proposed Interim Order And Loan Documents Far Exceed the Scope Of the Financing Motion, And Are Replete With Objectionable Terms.

13. Although the Financing Motion may appear to be somewhat benign on a superficial level, the proposed 19-page Interim Order goes far beyond the scope of the Financing Motion. Without limitation, HGCC objects to the following provisions of the Interim Order:

(a) Paragraph 2 of the proposed Interim Order is overbroad in purporting to authorize the Debtor to use loan proceeds to pay "ordinary and customary expenses of the Debtor." The expenditures of cash collateral or loan proceeds (if any) must be limited to a properly prepared budget approved by the Court.

(b) Notwithstanding anything in the proposed Interim Order to the contrary, any liens, superpriority status or other relief granted to a post-petition lender under 11 U.S.C. §364 should be subject to any adequate protection granted to HGCC for use of its cash collateral.

(c) The scope of the liens described in Section 4.a and Section 4.b of the proposed Interim Order appear to exceed the scope of the liens described in the Financing Motion.

(d) Paragraph 8 of the proposed Interim Order purports to authorize the lifting of the automatic stay without further court approval and to allow

Horizon to exercise remedies in the event of a loan default.  Pursuant to Bankruptcy Rule 4001(c)(B)(iv) and Local Rule B-4001-2(d), the proposed waiver of the automatic stay is invalid.  The granting of stay relief to Horizon or any other creditor should be the subject of a separate motion filed under 11 U.S.C. §362.

(e) Paragraph 11 of the proposed Interim Order purports to require the Debtor to pay all of Horizon's attorneys' fees without further order of the Court, and would allow Horizon the discretion to either pay such fees from loan advances or to add the fees to the post-petition indebtedness.  This provision violates Local Rule B-4001-2(b)(4) and is invalid.  Moreover, the provision is overly broad and purports to give Horizon relief that is not available to other secured creditors.

(f) Paragraph 15 of the proposed Interim Order is ambiguous at best and, at worst, purports to limit the provisions of any yet to be filed plan.  Provisions that limit or restrict the terms of a proposed plan are invalid.  Local Rule B-4001-2(b)(5).

(g) Paragraph 17 of the proposed Interim Order purports to release the Debtor's claims against Horizon (without prejudice to the rights of third parties to attempt to assert such claims for a limited period of time).  The provision is invalid and violates Bankruptcy Rule 4001(c)(B)(viii).

(h) The form of Security Agreement attached to the Financing Motion defines the "Secured Obligations" as all *present* and future obligations of the Debtor to Horizon.  The definition is invalid to the extent it purports to include the

present, pre-petition debt owed to Horizon.  Bankruptcy Rule 4001(c)(B)(ii); Local Rule B-4001-2(b)(1).

(i) The form of the Note and Security Agreement contain numerous other provisions not described in the Motion and highly problematic, including a February 28, 2014 "Maturity Date."

14. HGCC reserves the right to raise additional objections to the Financing Motion at the interim hearing.

### IV.  CONCLUSION

15. In summary, there is no showing that the Debtor needs any post-petition financing on an urgent basis to avoid immediate and irreparable harm.  Moreover, the proposed loan from an insider is suspect and deserving of heightened scrutiny.  HGCC believes that the proposed loan was motivated not by the Debtor's desperate need for cash, but by a desire to place Garrison (the party in control of both Horizon and the Debtor) in an unfair position detrimental to the creditors of this estate.  In addition, there has been no showing that Horizon or any other lender would not make an unsecured loan to the Debtor allowable as an administrative claim.  As in the case of cash collateral, the use of loan proceeds, if any, should be limited to those specific expenses identified in a proper cash flow forecast that are absolutely necessary to maintain the assets of the estate.  Lastly, any interim or final order on post-petition financing must conform with the applicable rules, be tailored to protect the interests of other creditors, and should not be the product of an inside deal to benefit the Debtor's insiders.

WHEREFORE, HGCC Lender, LLC respectfully requests that the Court deny the Financing Motion, and grant such other and further relief as is just and proper.

Respectfully submitted,


*/s/ James E. Carlberg*
James E. Carlberg
Attorney No. 3117-49
James P. Moloy
Attorney No. 10301-49
Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana  46204
(317) 684-5000
(317)  684-5173 (Fax)
jcarlberg@boselaw.com
jmoloy@boselaw.com


Mikel R. Bistrow
California Bar No. 102978
FOLEY & LARDNER LLP
3579 Valley Centre Drive
Suite 300
San Diego, CA  92130-3316
(858)  847-6700
(858)  792-6773 (Fax)
mbistrow@foley.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of January, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Mikel Renay Bistrow
mbistrow@foley.com
cburke@foley.com

Jason R. Burke
jburke@hopperblackwell.com
kellis@hopperblackwell.com

James E. Carlberg
jcarlberg@boselaw.com
mwakefield@boselaw.com

Deborah Caruso
dcaruso@daleeke.com
mtheisen@daleeke.com

Henry A. Efroymson
henry.efroymson@icemiller.com

George W. Hopper
ghopper@hopperblackwell.com
mroth@hopperblackwell.com

Erick P Knoblock
eknoblock@daleeke.com
dwright@daleeke.com

Joseph F. McGonigal
joe.mcgonigal@usdoj.gov

James P. Moloy
jmoloy@boselaw.com
dlingenfelter@boselaw.com
mwakefield@boselaw.com

Meredith R. Theisen
mtheisen@daleeke.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

I further certify that on the 27th day of January, 2014, a copy of the foregoing was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

*/s/ James E. Carlberg*
James E. Carlberg