UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HAMILTON PROPER PARTNERS | ) | Case No. 14-00461-JMC-11 |
| GOLF PARTNERSHIP, L.P. | ) | |
| | ) | |
| Debtor. | ) | |

**COMMITTEE'S OBJECTION TO DEBTOR'S AMENDED MOTION FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING**

Hamilton Proper Partners Golf Partnership, L.P., debtor and debtor-in-possession (the "Debtor"), filed *Debtor's Amended Motion For Authority To Obtain Post-Petition Financing* [Docket No. 72] (the "DIP Financing Motion") on February 26, 2014.  Debtor, the Unsecured Club Members' Committee appointed in this case (the "Committee"), Horizon III, LLC ("Horizon") and HGCC Lender, LLC ("HGCC") have not been able to agree on revisions to the Debtor's proposed interim order on the DIP Financing Motion (the "Proposed Interim Order"). As a result, and because the Proposed Interim Order is technically deficient and contains objectionable provisions, the Committee objects to the DIP Financing Motion.  Any order entered on the DIP Financing Motion should 1) correct the technical flaws contained in the Proposed Interim Order, 2) provide for a carve-out for and payment of professional fees that will be incurred in this case, 3) preserve this Court's jurisdiction to grant or deny stay relief, 4) delete or revise inappropriate events of default requested by Horizon and 5) narrow the releases currently contained in the Proposed Interim Order.[1]

---

[1] To avoid unnecessary duplication, this objection focuses only on issues not highlighted or raised in the *Objection Of HGCC Lender, LLC To Debtor's Amended Motion For Authority To Obtain Post-Petition Financing* [Docket No. 81] (the "HGCC Objection").  The arguments asserted by the HGCC Objection are incorporated by reference and restated in their entirety herein such that if the HGCC Objection is withdrawn, the arguments shall remain of record via this objection.

-2-

**Background**

1. On January 24, 2014 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. Since the Petition Date, the Debtor has operated its business and managed its property as debtor-in-possession pursuant to the provisions of Sections 1107(a) and 1108 of the Bankruptcy Code.

3. On February 12, 2014, the Committee was appointed and constituted by the United States Trustee pursuant to Section 1102(a)(1) of the Bankruptcy Code. *See* Docket No. 53. The appointment is a little out of the ordinary in that the Committee represents the interests of Members, many if not most of whom are unsecured creditors, but does not represent the interests of unsecured creditors that are not Members.

4. Debtor's primary asset is a golf course and country club known as "The Hawthorne's Golf and Country Club" located at 12255 Club Point, Fishers, Indiana 46038.

5. HGCC asserts a security interest in substantially all of Debtor's assets.

6. Debtor, pursuant to the DIP Financing Motion, seeks authority to obtain post-petition financing up to the maximum principal amount of $200,000 from Horizon pursuant to the terms and conditions of loan documents attached to the DIP Financing Motion. Horizon is owned and/or controlled by Harold D. Garrison, the Chairman, President and CEO of the sole member of the general partner of the Debtor. The proposed lender under the DIP Financing Motion is therefore an affiliate and insider of the Debtor.

### I. The Proposed Interim Order Contains Several Inconsistencies And Technical Flaws That Require Correction.

7. The Proposed Interim Order makes reference to several documents, liens and/or obligations that are not discussed or referenced in the DIP Financing Motion or elsewhere in this case. Horizon and the Debtor concede that some of these references are in error and should be corrected. However, in some cases, Horizon and the Debtor surprisingly profess to have no knowledge of the matters referenced but nonetheless refuse to delete them. By way of example:

   a. The introductory paragraph includes a reference to granting Horizon a security interest in preference actions against HGCC that is not part of the relief requested by the DIP Financing Motion and, accordingly, should be deleted.

   b. Paragraph D of the Proposed Interim Order refers to "prepaid deposits paid by Horizon for unrelated matters". Horizon and the Debtor have not been able to explain this reference and, without context or further description, the reference is confusing and should be omitted.

   c. Paragraph 4 of the Proposed Interim Order purports to preserve rights under subordination agreements, but Horizon and the Debtor have not been able to explain this reference and in fact have no knowledge of any applicable subordination agreements. That reference should be deleted.

   d. Paragraph 9 of the Proposed Interim Order references "Prior Permitted Liens", but that term is not defined anywhere in the Proposed Interim Order or the DIP Financing Motion.

-3-

dms.us.53790869.02

8.  In addition, paragraph 10 of the Proposed Interim Order is almost identical to paragraph 8. It is unnecessary and duplicative and should be deleted.

9.  The Committee believes that paragraph 11 of the Proposed Interim Order is unnecessary and inappropriate for this type of insider financing. Paragraph 11 basically orders the Debtor to pay Horizon any and all charges claimed by Horizon within ten days of billing, even if there is a dispute as to the validity or reasonableness of such charges. While paragraph 11 does provide a cumbersome mechanism to assert objections to Horizon's asserted charges, the Debtor must still pay the disputed charges before any resolution of the dispute ("pending a Court resolution of a Horizon Expense Objection, the Debtor shall promptly pay the Horizon expenses at issue…"). Debtor and Horizon, essentially the same party, are fighting the Committee's request that professionals be entitled to a carve-out and/or payment in this case (even after full and complete disclosure of fees and expenses), yet seek to pay Horizon's fees and charges, including attorneys' fees, without any real mechanism to review or dispute those charges and fees. This is not appropriate or necessary.

10.  To the extent some version of paragraph 11 survives, Horizon should at least be required to provide detail of its requested charges sufficient to enable the Committee and other interested parties to conduct a meaningful review of such charges. Paragraph 11 does not currently include language that would require Horizon to provide such detail.

11.  The Committee also requests that it be copied on and receive the same information available to Horizon pursuant to paragraph 12 of the Proposed Interim Order.

12.  The foregoing examples only highlight some of the technical flaws in the Proposed Interim Order. Counsel for the Committee has provided counsel for each of Debtor,

-4-

Horizon and HGCC with a mark-up showing additional technical problems and requests that any order entered on the DIP Financing Motion incorporate those revisions.

### II. The Proposed Interim Order Should Provide A Carve-Out For The Payment Of Professional And U.S. Trustee Fees Incurred, And To Be Incurred, In This Case.

13. The Proposed Interim Order would authorize the Debtor to borrow up to $200,000 from an insider and grant that insider post-petition liens and an administrative super-priority claim payable in front of any allowed administrative expense claim other than that of HGCC and/or Golden Investments VIII, LLC.

14. There is no proposed budget attached to the DIP Financing Motion or Proposed Interim Order and no meaningful restrictions on how borrowed funds may be used by the Debtor. There has been no showing that the full $200,000 in requested financing is necessary on an interim basis or, for that matter, on a final basis.

15. Despite the agreement to borrow funds from an insider, and despite enjoying the protections afforded by the Bankruptcy Code, Debtor has not attempted to negotiate, and neither Horizon nor HGCC has agreed to provide for any carve-out for, or payment of, the fees of professionals in this case or even the payment of U.S. Trustee statutory fees.

16. The Bankruptcy Court for the Southern District of New York recognizes the Court's role in preserving the integrity of the bankruptcy system by insisting on carve-outs or other provisions for the payment of professional fees:

> Indeed, it has been the uniform practice in this Court, particularly since the decisions in *General Electric Credit Corp. v. Peltz (In re Flagstaff Food Service Corp.)*, 762 F.2d 10, 13 Bankr.Ct.Dec. 745, Bankr.L.Rep. (CCH) ¶ 70,541 (2d Cir.1985), *and General Electric Credit Corp. v. Levin & Weintraub ( In re Flagstaff Food Service Corp.*), 739 F.2d 73, 12 Bankr.Ct.Dec. 222, Bankr.L.Rep. (CCH) ¶ 69,938 (2d Cir.1984), to insist on a carve out from a super-priority status and post-petition lien in a reasonable amount designed to provide for payment of the fees of debtor's and the committees' counsel and possible trustee's counsel in order to preserve the

> adversary system. Absent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced. It is similarly the practice of this Court not to approve financing arrangements containing clauses triggering default on the appointment of a trustee or examiner under section 1104. Such entrenchment of management may not be in the best interests of the estate and only precludes parties-in-interest from seeking to redress fraud or gross mismanagement through such an appointment. Nor are clauses requiring debtor retention of exclusivity approved. Clauses providing for absolute control over fees and entrenchment of management clauses skew the carefully designed balance of debtor and creditor protections that Congress drew in crafting Chapter 11.

*In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).[2]

17. The Committee has tried to negotiate to include a line-item in any cash use budget for the accrual of professional fees, understanding and offering that no payments on professional fees will be made until May of 2014, subordinating the super-priority administrative claims and liens granted to Horizon (and, as to cash collateral use, HGCC) to accrued and unpaid professional and U.S. Trustee fees. However, no party has been willing to provide any sort of carve-out or line item in a budget for professional fees. The Committee and Committee counsel have spent considerable time and effort since the start of this case to provide a source of comfort to the members who are in this case essential for the preservation of the going concern value of the Debtor. In the event of a failed case (which no party wishes to see), and absent any agreement prior to that point, the Committee would likely be forced to seek disgorgement and pro-rata disbursement of any fees already paid to Debtor's professionals in this case. *See, e.g., In*

---

[2] The cited portion of the *Ames Dep't Stores, Inc.* decision includes the following footnote: "There are few reported decisions under § 364. The need for cash is usually immediate. If the court is inclined to grant an application for authority to obtain credit, the time necessary to write an opinion could effectively doom any chance of reorganization. Each judge in the Manhattan branch of this court is presented with at least two such applications each month. Such applications are regularly granted by bankruptcy courts, *see generally* R. Rosenberg, M. Lurey, M. Flics, L. King, *Collier Lending Institutions and the Bankruptcy Code* ¶ 4.04[3] (1989), provided the standards articulated in the text are not infringed. The standards noted above are usually orally articulated.

*Footnote continued on next page . . .*

*re Channel Master Holdings, Inc.*, 309 B.R. 855, 860 (Bankr. D. Del. 2004) (discussing appropriateness of disgorgement of fees and pro-rata disbursement and citing cases); *In re Metropolitan Elec. Supply Corp.*, 185 B.R. 505, 511–12 (Bankr.E.D.Va.1995) (finding chapter 7 trustee's request for disgorgement of chapter 11 professional fees appropriate to the extent that payments exceed professionals' pro rata distribution amount).

18. For the foregoing reasons, the Court should balance the equities and protect the purposes of the Bankruptcy Code by denying approval of the DIP Financing Motion until reasonable provision for payment of professional and U.S. Trustee fees is included.

### III. *The Proposed Interim Order's Attempt To Grant An Insider Automatic Stay Relief Is Not Reasonable In This Case.*

19. Paragraph 8 of the Proposed Interim Order would allow Horizon to terminate funding, declare all amounts immediately due and payable and obtain automatic relief from stay upon the occurrence of a "Default" or "Event of Default" and five days written notice without further order of the Court (a "drop dead" provision). That provision is wholly unnecessary in a situation like this where the lender and borrower are the same entity. The Court should retain jurisdiction to determine stay relief requests. This is especially true in light of the fact that the defined terms "Default" and "Event of Default" (as discussed in the next section) include events that are not appropriate defaults in connection with insider lending. The Committee has suggested replacing the "drop dead" provision with a mechanism for an expedited stay relief hearing. Horizon and the Debtor have yet to agree to such substitution.

---

Debtors' and lenders' counsel are usually aware of these standards and generally tailor their agreements to comply."

> **IV.    The Appointment Of A Chapter 11 Trustee In The Chapter 11 Case Because of Fraud, Gross Mismanagement or Gross Misconduct Should Not be an "Event of Default" Under The Proposed Interim Order.**

20.     Paragraph 9(ii) of the Proposed Interim Order purports to make the appointment of a chapter 11 trustee in the Chapter 11 Case an "Event of Default", regardless of the reasons behind such appointment.

21.     The Court in *Ames Dep't Stores, Inc.* (cited by the Debtor in support of the DIP Financing Motion) observed, in a case where the debtor and the lender were truly independent and dealing at arm's length, that it is inappropriate to include the appointment of a chapter 11 trustee as a default trigger. 115 B.R. at 38 ("It is similarly the practice of this Court not to approve financing arrangements containing clauses triggering default on the appointment of a trustee or examiner under section 1104. Such entrenchment of management may not be in the best interests of the estate and only precludes parties-in-interest from seeking to redress fraud or gross mismanagement through such an appointment.") That principle carries additional weight where, as here, the proposed lender is an affiliate insider of the Debtor so that **both** lender and debtor may, in the context of an actual need for a chapter 11 trustee, hold interests adverse to the estate.

22.     For the same reasons, the default trigger in paragraph 9(viii) of the Proposed Interim Order ("material disruption (or change that is unacceptable to Horizon) in the senior management of Debtor") is inappropriate.

23.     The Committee has asked the Debtor and Horizon to revise the Proposed Interim Order to limit the "Events of Default" in 9(ii) and 9(viii) only to circumstances where a chapter 11 trustee is appointed "for reason other than fraud, gross mismanagement or gross misconduct of Debtor or its management." The Committee's request was refused by Horizon.

-8-

24. The only logical explanation for the refusal is that Horizon, controlled by Mr. Garrison, wants leverage to maintain control of the Debtor. Such a provision could force the Debtor to retain current management, even after the occurrence of theft or other fraud, because removal would mean no more post-petition financing (which the Debtor represents is essential to continue to operate). Such a provision cannot be in the best interests of Debtor's estate and should be deleted.

    **V.**    ***The Release Provided By The Proposed Interim Order Is Unfairly Broad. To The Extent Any Release Is Authorized, Such Release Should Be Limited To The Debtor's Rights To Contest The Amount And Validity Of Horizon's, And Only Horizon's, Claims.***

25. Paragraph 17 of the Proposed Interim Order could be construed to release all claims against any number of third parties. Paragraph 17 provides:

> In consideration for the Post-Petition Financing, Debtor on behalf of itself and its successors and assigns (collectively, the "Releasors"), but without prejudice to the rights of third parties (including the Committee) to assert claims on behalf of Debtor's estate (subject to Paragraph 18 below), shall forever release, discharge and acquit Horizon **and its managers, members, officers, employees, agents, attorneys and predecessors in interest** (collectively, the "Releasees") of any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type, including, without limitation, any so called "lender liability" claims or defenses, which arose on or prior to the date this Interim Order is entered with respect to Debtor, the Pre-Petition Indebtedness, the Collateral, the Pre-Petition Agreements, the Post-Petition Indebtedness or the Post-Petition Financing.

(Emphasis supplied.)

26. The Committee is not sure how many third parties can appropriately be described as "managers, members, officers, employees, agents, attorneys and predecessors in interest" of Horizon, but knows that there are several. This release could be read to release people like Mr. Garrison and other third parties from any claims (i.e., any that "arose on or prior to the date this

-9-

Interim Order is entered with respect to Debtor"). The Committee believes that this release must be a drafting error as it is hard to understand how Horizon could negotiate for, and Debtor could grant, a complete release of claims against parties not at all involved in the proposed post-petition financing. It should be revised to only release claims against Horizon and no other party. Further, Debtor should not be allowed to release any claims under Chapter 5 of the Bankruptcy Code ("Avoidance Action Claims") at this time.

27. Paragraph 19 of the Proposed Interim Order would release the Debtor's Avoidance Action Claims against Horizon and instead transfer the responsibility for the investigation and filing of those Avoidance Action Claims to the Committee or some other party in interest. In addition, paragraph 19 would require the Committee, or some other party in interest, to investigate and file those Avoidance Action Claims on or before May 13, 2014 ("no later than the earlier date that is ninety (90) days after formation of the Committee or…").

28. Debtor, Horizon, HGCC and the Committee have had active discussions regarding the costs of professionals in this case and the need to keep such costs to a minimum, especially during Debtor's off-season. Paragraph 19 of the Proposed Interim Order would have the exact opposite effect, requiring the Committee to investigate and potentially file Avoidance Action Claims in the next two months, with no promise of payment of fees incurred by Committee counsel to investigate the Avoidance Action Claims. Because such a result would be unfair and inconsistent, especially in these early stage of the case, Debtor should not be allowed to release any Avoidance Action Claims at this time.

WHEREFORE, the Committee respectfully requests that the Court deny the DIP Financing Motion unless the Proposed Interim Order is modified as requested herein. The Committee asks for all other just and appropriate relief.

-10-


Respectfully submitted,

FAEGRE BAKER DANIELS LLP

By:   /s/ Dustin R. DeNeal

*Proposed Counsel for Unsecured Club Members' Committee Of Hamilton Proper Partners Golf Partnership, L.P.*

Jay Jaffe (#5037-98)
Faegre Baker Daniels LLP
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile:  (317) 569-4800
jay.jaffe@faegrebd.com

Dustin R. DeNeal (#27532-49)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
dustin.deneal@faegrebd.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2014, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

George Henry Abel, II on behalf of Creditor Wills Excavating
gabel@easterandcavosie.com

Mikel Renay Bistrow on behalf of Creditor HGCC Lender, LLC
mbistrow@foley.com, cburke@foley.com

Jason R Burke on behalf of Creditor Horizon III, LLC
jburke@hopperblackwell.com, kellis@hopperblackwell.com

James E. Carlberg on behalf of Creditor HGCC Lender, LLC
jcarlberg@boselaw.com, mwakefield@boselaw.com

Deborah Caruso on behalf of Debtor Hamilton Proper Partners Golf Partnership, L.P.
dcaruso@daleeke.com, mtheisen@daleeke.com

-11-

-12-

Christopher Celentino on behalf of Creditor HGCC Lender, LLC
ccelentino@foley.com

Dustin R. DeNeal on behalf of Creditor Unsecured Club Members' Committee
dustin.deneal@faegrebd.com, sandy.engle@faegrebd.com;sarah.herendeen@faegrebd.com

Henry A. Efroymson on behalf of Creditor Golden Investments VIII, LLC
henry.efroymson@icemiller.com

George W. Hopper on behalf of Creditor Horizon III, LLC
ghopper@hopperblackwell.com, mroth@hopperblackwell.com;ghopper@hopperblackwell.com

Jay Jaffe on behalf of Creditor Unsecured Club Members' Committee
jay.jaffe@faegrebd.com, sarah.herendeen@faegrebd.com

Erick P Knoblock on behalf of Debtor Hamilton Proper Partners Golf Partnership, L.P.
eknoblock@daleeke.com, dwright@daleeke.com

Joseph F McGonigal on behalf of U.S. Trustee U.S. Trustee
joe.mcgonigal@usdoj.gov, joe.mcgonigal@usdoj.gov

James P Moloy on behalf of Creditor HGCC Lender, LLC
jmoloy@boselaw.com, dlingenfelter@boselaw.com;mwakefield@boselaw.com

Meredith R. Theisen on behalf of Debtor Hamilton Proper Partners Golf Partnership, L.P.
mtheisen@daleeke.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

                /s/ Dustin R. DeNeal